18-1392. May it please the court, Mark Furnish here for defendant appellant Darcy Wedd. Your honors, nobody likes judicial disqualification claims. Redolent of gamesmanship, they're widely viewed with skepticism. What sets this one apart is the judge's publicly professing, after presiding over two mistrials ending in hung juries, that she believed the defendant was guilty. This, after the judge had unilaterally raised the prospect of her own recusal, suggesting it was, quote, the right thing to do, only to backtrack sharply without substantive explanation. To make matters worse, the judge pronounced guilt in the absence of the defendant and his counsel, having excused them from the courtroom moments earlier. Adding all these anomalies together, your honors, a neutral observer might reasonably question the judge's impartiality, concluding that she predetermined the ultimate issue of the defendant's guilt or non-guilt. Now, because the resulting appearance of impropriety subverted the presumption of innocence, our criminal justice system's core tenet, disqualification was required, and Darcy Wedd's conviction must be reversed. Now, that brief introduction concludes my prepared remarks, but I'll offer two extemporaneous observations, and then, if it's okay with the court, turn it over for any questions you might have. What's the policy behind 28 U.S.C. section 455A? This is not simply a rule that Congress enacted to benefit defendants or give them some sort of a windfall based on appearances of partiality or, after the fact, second-guessing. There's a much broader policy objective at play here, and that's to provoke public confidence in the integrity of our judiciary. And I would submit to the court that that concern, which falls squarely within this court's supervisory authority to enforce, is more vital now than ever, with our courts increasingly viewed, wrongly in my opinion, but on social media and regular media and in the public as just more ordinary political branches, as if judges are always going to vote based on labels like conservative or liberal or something like that, and we have increasingly, rather than cases being seen as live controversies with singular facts, as just referendums on public opinion. So the enforcement of judicial integrity, the promotion of judicial integrity as being above the fray with unimpeachable impartiality, it strikes me as more important than ever in today's climate. And that's one reason why the Supreme Court, as Rob Salencio says, an improper failure to recuse based on the appearance of partiality is, again, not using the term, a structural error or structural defect that requires automatic reversal of an ensuing conviction. And that leads me to my second point. This may seem like a drastic remedy in the abstract, although I think it's commensurate with the harm wrought to public confidence in the judiciary when an apparently biased judge, apparently, I stress, is allowed to sit in judgment of a defendant's case. But in our case, in Darcy Webb's case, a reversal would not lead the sky to fall. Mr. Webb, as I pointed out in my brief, is an Australian national facing certain years, two and a half years, in very, very harsh pandemic conditions, not only because of COVID-19, but because he's a foreign national in an immigration detention facility in Moshannon Valley in Pennsylvania. So even if the court were to think that this would be a drastic remedy in the abstract, which again, I think it's an appropriate remedy, automatic reversal, in the case of Darcy Webb, the world is not going to fall off its axis were the court to reverse his conviction on the ground that I've articulated. And with that, I'd welcome any questions the panel might have. Well, thank you very much. Judge Park? Yes, thank you. The standard here is high. I think it's deep-seated favoritism that has to be shown. And I guess there's two comments, it seems like, that you're pointing to. One is the relative culpability of Mr. Webb with respect to his co-defendant. And then the separate one about maybe, I guess the judge kind of musing about having the third trial in front of another judge. Are you arguing that each of those is independently sufficient to establish the favoritism required for a new trial? That's not my argument, and I don't think the court needs to grapple with that question here, because my argument is to be clear. In the unique confluence of circumstances in this case, the appearance of deep-seated favoritism after two trials that this judge presided over, both of which resulted in hung juries 7-5 at the first one, 11-1 at the second one, a reasonable observer would be driven or might well be driven to conclude that the judge, having heard and seen all the evidence, having not just formed and held a view of the defendant's guilt, which is entirely appropriate, but having broadcast that view in public, would be motivated to get on with it at the third trial and ensure this defendant was finally convicted along the lines of what she deemed to be the appropriate result. Again, this is what the average citizen would... So is all of it taken together, the context of it being the third trial plus the two comments? Yes, and the fact that she broached it of her own initiative, but let me be perfectly clear about this. The one factor that, in my view, really sets this case apart is the pronouncement of the defendant's culpability after two juries had refused to enter that finding, and indeed at least five in the first trial would have voted to acquit him. So to me, that's substituting the judge's own judgment for that of the two juries, and the case was plainly a lot closer than the judge fancied it, otherwise we wouldn't be here for a third trial. And again, without belaboring it, it's the combination of circumstances. Okay, thank you. Judge Maloney. Thank you. I have a couple of questions. Your client was found guilty by a jury and not by the district court, correct? That is correct. Are you arguing that the district court's comments somehow made their way or were known to the jury, or are you making this separate argument that even if they did not infect the outcome of this case, they simply required recusal just for independent violation of the recusal statute? The latter. Okay. So how does this differ from a district court faced with a question of pre-trial release where the court quite properly assesses the strength of the evidence against the defendant and makes a comment to the effect that one of the factors leading to detention is the overwhelming evidence of the defendant's guilt? 18 U.S. Code 3142, the bail statute, directs the court to consider the strength of the evidence in assessing whether the defendant poses a danger to the community, a risk of flight, and whether there are any reasonable conditions that could ameliorate those factors. So that's something that the judges are statutorily obligated to consider in the bail context. And this has, and statute 3142 expressly says that considering the evidence does nothing to denigrate the presumption of innocence and shall not be so construed. I mean, this comment by the judge turns the applicable presumption of innocence literally on its head. It flies in the face of what we're asking juries to do to begin with, which is something of a legal fiction, as anybody who's ever tried a case in the district court knows full well. But nonetheless, that's the legal fiction we're asking jurors to indulge. If a judge can't indulge that and defies it in open court on the record, what kind of impression is that going to leave with the public? Because the public evaluation of the judiciary's integrity is what's at stake here, as encoded in 455A, that's the policy behind it. So respectfully, I suggest that the... Yeah, go ahead. Just to back up then, you agree that if a judge were to make such a statement in the case of, for example, say, Mr. Webb's detention hearing, if the court had said something along those lines in that hearing, it would not have violated the recusal statute. But because she said something quite similar in considering the detention of a co-defendant, you do think it's a violation of 455? Well, she wasn't considering it in the context of the detention of a co-defendant. She was talking about trying to focus the co-defendants who had just been convicted, by the way. The co-defendant had just been convicted. So the presumption of innocence goes out the window as to him. She was saying it ahead of the co-defendant's sentencing, and making reference to the concerns she wanted to address at sentencing, that even though Frasier Thompson, the co-defendant, had just been found guilty by a jury that refused to convict Mr. Webb, she wanted to hear arguments about relative culpability at sentencing. So this is not a 3142 detention issue. And respectfully, 3142 is a very carefully calibrated statute that was passed in 1986 as part of the Bail Reform Act to satisfy, in part, constitutional concerns raised with locking people up before they had been convicted of anything and the implications that that would have for the presumption of innocence. And Congress expressly considered those arguments in passing 3142, mandating that courts consider, A, the strength of the evidence, but B, without denigrating any presumption of innocence. So it's a very, very different context, one that I don't think is applicable or analogous to this one. Very good. Thank you very much. You're welcome. Hello? Jessica Brennan? Sorry, I was on mute. I'm sorry to say. Some people would rather mute me. I understand. No, no. Well, I was trying to mute you, in fact. But now I understand why I couldn't get through. So with apologies. No, it's understandable. I try to avoid these voiceovers, even when it's not muted. But nevertheless, I ask counsel to try to be as crisp as possible in answering the question, not to use the opportunity to respond to one of the judges as an opportunity to extend the argument itself. Let me ask you, while I have you for a moment, this is your strongest argument. You have many other arguments. I understand that. But the recusal argument is the killer, as it were. That is, it's the argument that would throw the whole case out and we wouldn't have to address the other portentous claims that you make. So I think it's fair to say that this is the big one. This is the big issue here. Well, this one cuts across the whole case, Judge. The second argument on conscious avoidance might well require the reversal of the entire conviction in addition. But you're quite right in that this one cuts across the whole case and there's no need to get into a prejudice or harm with error inquiry as to this claim. Okay. Well, this is fine. Let's hear from the government. Thank you, and may it please the court. I'm Assistant United States Attorney Richard Cooper. I've represented the government below and here on appeal. Turning to recusal, the defendant below never sought recusal, never cited the recusal statute, or even used the word recusal at any point in the proceedings. There was never a claim of unfairness or that the district judge was not evenhanded. And as such, Judge Forrest's decision not to transfer the case is reviewed for plain error here. And there's no basis under that standard or any standard to find error. The Supreme Court's Litecky case recognizes that it is not a basis for recusal where the district judge forms an opinion or a view of the evidence. In fact, that happens routinely during the course of proceedings. Turning to Judge Nardini's comment, in addition to pretrial release, it's routine during the course of a trial for a district judge to rule on the admission of co-conspirator statements, which require, as a predicate, the district judge to make a finding by a preponderance of the evidence that the defendant and the declarant were in a conspiracy together. That happens routinely. At sentencings, judges routinely assess relative culpability of the defendant to be sentenced with other members of the conspiracy, including defendants who have not yet been convicted. The defense's argument here would require waiting until everybody has either pled guilty or been convicted at trial before sentencing any of the defendants. And that's just not a rule that's ever been announced or that would be fair to the defense. With respect to the case here, with the contemporaneous evidence at the time, including the fact that there was no indication by the defense that there was any issue, is evidence that there was no perception of partiality and that the recusal argument before this court is a fallback position for a defendant who's been convicted at trial. With that, I'm happy to answer any questions the court has. Thank you. Judge Park? Yes, thank you. I'm just wondering if you could address what your adversary was saying about the context here, which is that the relative culpability of, I guess, Mr. Thompson, who had just been convicted for sentencing purposes, presupposes that the judge viewed Mr. Webb as not only relatively more culpable, but in fact guilty. So it seems tantamount to her having said, I think Mr. Webb is guilty of the charges. Isn't that a fair reading of that statement? I don't believe so, Your Honor, for a few different reasons. First, a discussion of relative culpability is not the same as a finding of guilt. It's more akin to, as I noted earlier, what happens routinely at sentencing in multi-defendant cases where a judge assesses the defendant in front of her or him in the context of a broader conspiracy. As part of a pre-sentence investigation report prepared prior to sentencing, the probation department describes the overall conspiracy, including the activities and conduct of defendants who have not yet been convicted. And that all goes into the mix under 3553A when a judge pronounces sentence. So in response to the question, a discussion of relative culpability, particularly in the context in which Judge Forrest made those comments, which was to focus the co-defendant and his counsel on the types of arguments and types of submission that she felt would be most helpful in sentencing, if not the same as a pronouncement of guilt beyond a reasonable doubt. Okay. Thank you. No other questions? Judge Marzini? No, thank you. Shall I rebut, Your Honor? I have two minutes. Hello? Let's wait one second. I'm sorry, this is the courtroom deputy. I don't see Judge Kavranas connected to the call. Hold on. Okay. Okay. Okay, I apologize. I'm sure he'll be calling in a few minutes, in a few seconds, I'm sure. Okay. No worries. Okay. Thank you. This is the courtroom deputy. The judge will be joining us in just one minute or so. Thank you. Okay. Thank you. Judge, can you hear me? I can. Can you hear me? Yes, Judge. Thank you. Sorry about this. We have rebuttal, Judge, now.      I'm sorry. I'm sorry. I'm sorry. I'm sorry. Okay. We have rebuttal now on the case. Thank you. Okay. Thank you. Just very quickly, on the Preservation point, I would respectfully refer the court to pages 6 through 11 of my reply brief, where it sets out four reasons why the argument is adequately preserved. First, judges have an independent, mandatory duty to recuse where their impartiality might reasonably be questioned. Second, the Supreme Court's Holguin-Hernandez case makes clear that the issue was adequately presented below. Third, the purpose of the contemporaneous objection rule, notice and opportunity to correct, is plainly satisfied where the judge herself had broached the prospect of recusal. And fourth, tactical considerations are always at play with a delicate recusal motion. You don't want to antagonize the judge who's potentially going to make decisive evidentiary rulings at your case by waving a red tape in front of a bull, in essence. The second point, I agree with my friend on the other side about Liddickey, the Supreme Court's 94 case. It's human nature for a judge to hold and form opinions about a case, having heard it before. It's a different animal entirely for a judge to broadcast in open court opinions on the ultimate issue in the case in defiance of the presumption of innocence, meaning the defendant's guilt or non-guilt. And my third comment is, in response to, I guess it was Judge, I'm not sure if it was Judge Parks or Judge Nardini's question, my friend on the other side said that Judge Forrest didn't make any finding of guilt beyond a reasonable doubt. That's not our argument. And the judge didn't have to have done that. That's a lawyer's argument when the applicable standard is what a reasonable lay person would think in all the circumstances at hand. They're not going to be getting into nuances about preponderance of the evidence, guilt beyond a reasonable doubt. This was not sentencing. This was a remark made in open court after two mistrials where a jury had just declined to find the defendant guilty again while convicting another defendant who said this defendant was guilty and that mandated recusal and mandates reversal here. Thanks very much for hearing me. Appreciate it. Thank you. Thank you very much. Bye bye. Thank you. We'll reserve the decision.